**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **LATESA FOBBS, LATOYA COLLINS, RICKY STEVENS, and DEONTRE LOWERY,** individually, and on behalf of others similarly situated, | Civil Action File No. |
| Plaintiffs, | |
| vs. | |
| **RIVERWAY BUSINESS SERVICES INC.**, a Texas Corporation, | |
| Defendant. | |

---

**COLLECTIVE AND CLASS ACTION**
**COMPLAINT AND JURY DEMAND**

Plaintiffs, LATESA FOBBS, LATOYA COLLINS, RICKY STEVENS, and DEONTRE LOWERY ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Class/Collective Action Complaint against Defendant RIVERWAY BUSINESS SERVICES INC. ("Defendant"), and state as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and for common law claims of breach of contract or (in the alternative) unjust enrichment.

2. According to its website, Defendant "is a leading full-service staffing company."[1]

---

[1] *See*, https://www.riverway.jobs/about-us.aspx (last visited 2/10/2023).

3. Defendant fulfills the staffing needs for numerous companies by providing them with hourly employees.

4. Defendant manages the work of these employees through its written policies, including the attendance, time-rounding, schedule adherence, performance, and compensation policies discussed herein.

5. For example, Plaintiffs were employed by Defendant as hourly remote customer service agents (hereinafter "CSAs") who perform customer support services for NRG Energy Inc.'s customers.[2]

6. Defendant compensates its hourly employees using a time rounding system, in which the employees time is rounded to the nearest quarter of an hour. As explained herein, the time rounding policy is unlawful because, when examined in conjunction with Defendant's other policies and practices (i.e. as applied), it is not a neutral time rounding policy. *See Austin v. Amazon.Com, Inc.*, 2010 WL 1875811 (W.D. Wash. May 10, 2010) (facially neutral rounding policy not neutral as applied in combination with employers' other policies).

7. Defendant's rounding policy only results in the rounding down of hours and virtually never results in the rounding up of hours.

8. Specifically, under Defendant's written attendance and schedule adherence policies, hourly employees are either expressly prohibited or discouraged from recording their time in a way that allows them to benefit from the time rounding policy.

9. The time rounding policy routinely results in hourly employees losing time and rarely results in them gaining time.

---

[2] *See*, Welcome to NRG | NRG Energy (last visited 2/10/2023).

10.     Additionally, Defendant violated the FLSA by failing to include non-discretionary bonuses (incentive pay) in the calculation of the CSAs' overtime rates.

11.     The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSAs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry.  *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

12.     One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

13.     More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

14.     Defendant requires its CSAs to work a full-time schedule, plus (when approved) overtime, however, Defendant does not compensate CSAs for all work performed.

15.     Through its attendance, schedule adherence, and performance metrics, Defendant requires their CSAs to perform compensable work tasks off-the-clock before and after their scheduled shifts, during their unpaid meal periods, and at the end of their scheduled shifts.

16.     This results in CSAs not being paid for all time worked, including overtime.

17.    In the course of performing their job responsibilities, Defendant's CSAs use multiple computer networks, software programs, applications and phone systems.

18.    The time CSAs spend booting up and logging into these programs and applications before, during, and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSAs' work, and they cannot perform their jobs effectively without them.

19.    Defendant's CSAs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

20.    Upon information and belief, Defendant's CSAs all follow the same timekeeping process and are subject to the same relevant timekeeping, time rounding, schedule adherence, performance,  and attendance policies.

21.    Plaintiffs seek to represent in this action all current and former CSAs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

22.    Defendant knew or should have known how long it takes CSAs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work but did not.

23.    Defendant knew or should have known that CSAs, including Plaintiffs, worked overtime hours for which they were not compensated.

24.    Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them,

the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

**JURISDICTION**

25.    This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

26.    Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

27.    Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

28.    This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

29.     Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

30.    Defendant's CSAs, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

31.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form

part of the same case or controversy under Article III of the United States Constitution.

32.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

33.    This Court has personal jurisdiction over Defendant because it conducts business within the state of Texas, has its principal place of business and headquarters in Texas, is registered with the Texas Secretary of State and employs individuals within the state of Texas.

34.    This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Texas, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this district and division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

35.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal place of business in this District.

## PARTIES

36.    Plaintiff LATESA FOBBS ("Plaintiff Fobbs") is a Texas resident who worked for Defendant as a remote CSA in Texas within the last three years.

37.    Defendant paid Plaintiff Fobbs for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $14.00 per hour.

38.    Plaintiff Fobbs signed a consent to join this collective action lawsuit. **Exhibit 1**,

Fobbs Consent to Join.

39.     Plaintiff LATOYA COLLINS ("Plaintiff Collins") is a Texas resident who worked for Defendant as a remote CSA in Texas within the last three years.

40.     Defendant paid Plaintiff Collins for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $14.00 per hour.

41.     Plaintiff Collins signed a consent to join this collective action lawsuit. **Exhibit 2**, Collins Consent to Join.

42.     Plaintiff DEONTRE LOWERY ("Plaintiff Lowery") is a Texas resident who worked for Defendant as a remote CSA in Texas within the last three years.

43.     Defendant paid Plaintiff Lowery for his services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $14.00 per hour.

44.     Plaintiff Lowery signed a consent to join this collective action lawsuit. **Exhibit 3**, Lowery Consent to Join.

45.     Plaintiff RICKY STEVENS ("Plaintiff Stevens") is a Nebraska resident who worked for Defendant as a remote CSA in Texas within the last three years.

46.     Defendant paid Plaintiff Stevens for his services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $14.00 per hour

47.     Plaintiff Stevens signed a consent to join this collective action lawsuit. **Exhibit 4**, Stevens Consent to Join.

48.     Defendant is a Texas Corporation (Taxpayer No. 17603233242) with its principal place of business located at 21922 Royal Montreal Drive, Katy, Texas 77450.

## **GENERAL ALLEGATIONS**

49.    Defendant employed Plaintiffs as remote CSAs from Plaintiffs' home offices within the last three (3) years.

50.    Defendant's CSAs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) taking in-bound calls from and making out-bound calls to individuals who need assistance; (c) ensuring that every call is documented and accounted for in Defendant's system; (d) reading emails daily with work instructions; and (e) logging out of the computer software programs and applications and the hard phones and shutting down their computers.

51.    Defendant's CSA jobs are hourly, non-exempt positions with rigid schedules that require CSAs, including Plaintiffs, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

52.    These schedules result in CSAs routinely working unpaid overtime. Indeed, throughout their employment with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their roles as a CSA.

53.    At all relevant times, Defendant controlled their CSAs' work schedules, duties, protocols, applications, assignments, and employment conditions.

54.    Defendant was also responsible for training and continuing their CSAs' education in their role as CSAs.

55.    Defendant's CSAs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications, and phone systems.

56.     These programs, applications, and systems are integral and an important part of the CSAs' work, and they cannot perform their jobs without them.

57.     Defendant's CSAs all follow the same timekeeping process, are subject to the same relevant timekeeping, time rounding, and attendance policies, and are subject to quality assurance reviews (performance metrics) based on the same or similar criteria.

58.     Defendant instructs and trains CSAs to have all of their computer networks, software programs, and applications open and ready at the start of their scheduled shifts, and before they can log into Defendant's phone system to begin taking phone calls.

59.     According to Defendant's "Attendance Standards," "Agents will arrive at least 7-10 minutes early to work/training. **Exhibit 5**, Attendance Standards and Acronyms. This is because, as explained below, it takes the CSAs at least 7-10 minutes to boot up their computers and log-into all of the computer programs needed to assist callers.

60.     Further, the CSA's "[a]dherence to all scheduled hours will affect attendance performance." "Adherence" is defined in Defendant's written policies as "[a]dhering to your schedule by clocking in/out at designated times." *Id*.

61.     Accordingly, the more time a CSA records outside of their scheduled hours, the lower their Adherence score.

62.     Further, if a CSA fails to adhere to their schedule by being tardy (clocks-in after their scheduled shift), then it is considered an attendance violation, which may subject them to discipline. *Id*.

63.     Defendant routinely schedules CSAs for forty-hours per week; however, Defendant prohibits them from working unapproved overtime.

64.    Defendant instructs CSAs that "[t]o work overtime it must be approved" and "you can only sign up for overtime when it is available." **Exhibit 6**, Overtime Policy.

65.    As referenced above, Defendant utilizes a time-rounding system, which rounds the CSAs' time to the nearest quarter of an hour. **Exhibit 7**, Rounding Policy.

66.    Defendant's rounding policy, as applied in combination with Defendant's other policies, does not qualify as a permissible rounding policy under the FLSA, see 29 C.F.R. § 785.48(b), because Defendant scheduled CSAs for 40 hours, prohibited them from exceeding 40 hours, required them to clock-in before their scheduled shift, and prohibited them from clocking in after the start of their scheduled shift.

67.    In other words, the time-rounding policy was not neutral as applied, because the CSAs could not benefit from it without violating Defendant's written attendance and schedule adherence policies.

68.    Thus, this arrangement did not "average[] out so that the employees [we]re fully compensated for all the time they actually work," and instead, "result[ed], over a period of time, in failure to compensate the employees properly for all the time they have actually worked." *Id*.

69.    Pursuant to Defendant's Attendance Standards, CSAs are instructed to record their work time based on their Avaya log-in time. **Exhibit 5**, Attendance Standards and Acronyms.

70.    However, as indicated on the "Acronyms" page included with the Attendance Standards, CSAs were encouraged not to be in auxiliary codes in Avaya for an extended period of time and to use them "sparingly." *Id*.

71.    Further, the CSAs were instructed to clock-in/out at their scheduled shift start and end times, and to adhere to their schedule by "returning from breaks and lunches on time." *Id*.

72.     Defendant also graded agents on their "Average Handle Time (AHT)."

73.     This performance metric monitors how quickly CSAs can resolve a caller's inquiry. *Id*. If the CSAs did not have their computer programs loaded before logging into Avaya, and thus, were forced to open them while on a call, then it would slow down their ability to assist the caller, which would consequently reduce their AHT scores.

74.     Accordingly, through its written policies, Defendant pressures CSAs to load and log-into their required computer systems *before* logging into Avaya, and, therefore, *before* they record their start time.

75.     Defendant's scoring guidelines measure a CSAs' ability to adhere to mandatory protocols and are comprised of various performance metrics, including but not limited to the CSAs' complete and correct resolution of issues and inquiries.

76.     This performance metric necessarily requires that CSAs be logged into all computer programs, applications and systems, and have all reference materials and available resources open at the time of the call.

77.     Defendant furthermore enforces their policy of requiring all computer networks, programs and applications be open and ready before logging into Avaya, and critically, before they clock in, through their other performance metrics and schedule adherence policies.

78.     Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

79.     Because CSAs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

11

80. Thus, the hours reflected on the CSAs' pay stubs are inaccurate and contrived by Defendant.

81. In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their CSAs for no less than fourteen (14) minutes per day of work performed during pre- and post-shift time and during their lunch periods.

82. This time could easily be recorded, accounted for, and paid, but Defendant chose not to credit such time as time worked.

### A.    Pre-Shift Off-the-Clock Work

83. In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSAs perform pre-shift work tasks for which they are uncompensated.

84. Pursuant to Defendant's policies, training and direction, Defendant's CSAs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

85. The pre-shift startup and login process takes substantial time on a daily basis with said time averaging seven (7) to ten (10) minutes per day, and the tasks can take longer if CSAs experience technical problems with the computer, software, and/or applications.

86. Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other CSAs, were required to complete the following tasks or tasks substantially similar: turn on the computer, load and log-into windows, connect to Defendant's virtual private network (VPN) called Cisco Any Connect Secure Mobility, load and log-into SAP, load and log-into CMP, load and log-into KIP (the knowledge base system), load and log-into Outlook (the email system), and load and log-into Avaya (the phone system).

87.     The aforementioned tasks are an integral and essential aspect of a CSA's job duties and responsibilities, as CSAs must have all of the above referenced computer programs, systems, and applications up and running on their computers in order to be prepared to accept incoming calls through Avaya, which acts as the CSA's timestamp.

88.     Defendant fails to compensate CSAs for the computer boot up tasks.

89.     Instead, as discussed above, Defendant maintains attendance, adherence, performance, and time rounding policies that require them to be call-ready at the start of their scheduled shift.

90.     Prior to the start of their scheduled shifts, Defendant also requires CSAs to read emails with work instructions and announcements for the day, which further pressures them into performing off-the-clock work.

91.     As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSAs for no less than seven (7) minutes per day of work performed in connection with the above pre-shift activities.

**B.      Meal-Period Off-the-Clock Work**

92.     Defendant provides their CSAs with one (1) hour of unpaid lunch break per shift.

93.     However, the CSAs do not recognize the full hour lunch period because Defendant routinely requires CSAs to perform work during their unpaid lunch breaks.

94.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are

rest periods. The employee must be _completely relieved_ from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

95.    Defendant does not provide CSAs with a bona fide meal period because its policies and procedures require CSAs to return from their lunch early to perform at least part of the boot up process outlined above.

96.    In fact, several of the programs utilized by CSAs automatically log them out if they are idle for more than a few minutes (at lunch), which requires them to undergo some or all the bootup process outlined herein.

97.    On most days, CSAs spend approximately five (5) to seven (7) minutes performing this work during their unpaid meal breaks on most days, however, such time is even greater, when CSAs are required to do a complete reboot.

98.    Defendant's time rounding policy applied to the CSA's lunch breaks, similar to the start of their shift.

99.    Specifically, all CSAs are subject to discipline for clocking in after the end of their scheduled lunch break, and at the same time, prohibited from recording less than an hour lunch under Defendant's prohibition on unapproved overtime and schedule adherence policies.

100.    Defendant's management is aware that this was Plaintiffs' and other CSAs' practice to perform these tasks off the clock, and could have paid CSAs for this time, but did not.

**C.    Post-Shift Off-the-Clock Work**

101.    Pursuant to Defendant's policies, training and direction, Defendant's CSAs are

required at the end of each shift to log out of the essential computer software programs and applications utilized during their shifts.

102.    Defendant's written policies instruct CSAs to adhere to their schedule by "clocking in/out at designated times." **Exhibit 5**, Attendance Policies and Acronyms.

103.    Defendant also prohibited the CSAs from stopping work before the end of their scheduled shift. For example, Defendant's Employee Guidelines state that CSAs are "expected to honor the original time commitment that [they] agreed upon." **Exhibit 8**, Employee Guidelines.

104.    The shutdown and logout process requires another two (2) to three (3) minutes of off the clock work per shift.

105.    However, if the CSAs complied with Defendant's written policies and clocked out at the end of their schedule shift, they were not credited with the time spent shutting down and logging out of their computers.

106.    Pursuant to Defendant's policies, training and direction, Plaintiffs and the other CSAs are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last fielded call.

107.    Defendant did not compensate CSAs for all the time spent shutting down and logging out of their essential work systems.

108.    The unpaid off-the-clock work performed after each shift by Plaintiffs and all other CSAs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSAs.

    D.    **Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies**

109.    An example of a specific workweeks where Defendant failed to pay Plaintiff Fobbs

15

all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes

the following:

### Pay Period of November 1, 2021, to November 7, 2021

- Plaintiff Fobbs was paid at a rate of $14.00 per hour for the 40 regular hours and $21.00 per hour for 4 overtime hours Defendant credited her with as having worked.

- With unpaid pre-shift, meal-period, and post-shift time, in a range of fourteen (14) to twenty (20) minutes per shift, at five shifts per week, Plaintiff Fobbs should have been paid an additional seventy (70) to one hundred (100) minutes at her overtime rate of $21.00 during the overtime workweek.

### Pay Period of October 18, 2021, to October 24, 2021

- Plaintiff Fobbs was paid at a rate of $14.00 per hour for exactly 40 regular hours.

- With unpaid pre-shift, meal-period, and post-shift time, in a range of fourteen (14) to twenty (20) minutes per shift, at five shifts per week, Plaintiff Fobbs should have been paid an additional seventy (70) to one hundred (100) minutes at her overtime rate of $21.00 during the overtime workweek.[3]

110.    Plaintiffs Collins, Stevens, and Lowery similarly routinely worked over forty hours

or more hours per week.

111.    The off-the-clock hours at issue herein constitute overtime hours worked in

virtually all workweeks.

### E.    Defendant Benefitted from the Uncompensated Off-the-Clock Work

112.    At all relevant times, Defendant directed and directly benefitted from the work

performed by Plaintiffs and similarly situated employees in connection with the above-described

pre-shift, meal-period and post-shift activities performed by CSAs.

---

[3] CSAs are sometimes scheduled 40 hours per week across 4 shifts, rather than 5. For example, during her employment with Defendant, Plaintiff Fobbs has been scheduled to work 7AM-6PM Monday to Thursday (10-hour shifts), but on different weeks 8AM-5PM Monday to Friday (8-hour shifts).

113.    At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of their CSAs.

114.    At all relevant times, Defendant was able to track the amount of time CSAs spent in connection with the pre-shift, meal-period, and post-shift activities.

115.    Defendant failed to do so and failed to compensate CSAs for the off-the-clock work they performed.

116.    At all relevant times, CSAs were non-exempt hourly employees, subject to the requirements of the FLSA.

117.    At all relevant times, Defendant used their attendance, adherence, performance, and timekeeping policies against the CSAs in order to pressure them into performing the pre-shift, meal-period, and post-shift off-the-clock work.

118.    Defendant expressly trained and instructed CSAs to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take calls (i.e., were "phone ready") the moment their shifts began.

119.    At all relevant times, Defendant's policies and practices deprived CSAs of wages owed for the pre-shift, meal-period, and post-shift activities they performed.

120.    Because Defendant's CSAs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

121.    Defendant knew or should have known that the time spent by CSAs in connection with the pre-shift, meal-period, and post-shift activities was compensable under the law.

122.    In light of the explicit DOL guidance cited above, there is no conceivable way for

Defendant to establish that they acted in good faith.

123.    Despite knowing CSAs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work, and instead suffered and permitted it to happen.

124.    Unpaid wages related to the off-the-clock work described herein are owed to CSAs at the FLSA mandated overtime premium of one and one-half times their regular hourly rate because CSAs regularly worked in excess of forty (40) hours in a workweek.

## F.  Failure to Include Incentive Pay in the Regular Rate Calculations

125.    Under the FLSA, the regular rate is the "keystone" to calculating the overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." 29 C.F.R. §778.108.

126.    No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. §778.109.

127.    "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

128.    Defendant's compensation scheme, which included an hourly rate, plus incentive pay, did not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

129.    An hourly plus commission-based employee's regular rate of pay is computed by reference to the number of hours the commission payment is intended to compensate. 29 C.F.R. §778.117.This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission. *Id*.

130.    It does not matter whether the commission earnings are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval. *Id*.

131.    The fact that the commission is paid on a basis other than weekly, and that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate. *Id*.

132. There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. The burden is on Defendant to establish that any payment should be excluded. Thus, determining the regular rate starts from the premise that all payments made to Plaintiffs for work performed are included in the base calculation unless specifically excluded by statute.

131.    Even "[w]hen the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek (except overtime premiums and other payments excluded as provided in section 7(e) of the Act), and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard." 29 C.F.R. §778.118.

132.    Once the total amount of an employee's "regular" compensation is deduced, "the

determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to rate per hour to determine compliance with the statute.

133.    Because Defendant's compensation scheme failed to incorporate the regular rate of pay, Defendant failed to properly compensate Plaintiffs and its other CSRs under the FLSA.

Exemplary Pay Periods

134.    Defendant pays CSAs on a weekly basis. An example of a particular pay period where Defendant failed to pay Plaintiff Fobbs overtime at the correct overtime rate includes the following:

**Pay Period of January 24, 2022, to January 30, 2022**

- Plaintiff Fobbs worked 40 regular hours at her regular hourly rate of $14.00 per hour and 1.75 hours at her overtime rate of $21.00 per hour.

- However, Plaintiff Fobbs also received $163.00 as an "Incentive Bonus" during this pay period. Accordingly, her overtime rate should have been recalculated as described above to include this Incentive Bonus pay in her overtime rate calculation.

*See*, **Exhibit 9**, Exemplary Regular Rate Paystub.

135.    Similarly, Plaintiffs Collins, Stevens, and Lowery received incentive pay that was unlawfully not included in the calculation of their overtime rates.

## FLSA COLLECTIVE ACTION ALLEGATIONS

136.    Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former hourly CSAs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

137.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CSAs.

138.    Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek.

139.    Defendant assigned and/or was aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

140.    Defendant implemented and enforced an unlawful time-rounding policy, as explained herein.

141.    As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

    a.    Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek;

    b.    Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant; and

    c.    Willfully failing to include all remuneration paid in the calculation of the FLSA Collective's overtime premium rates.

142.    Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

143.    Defendant's unlawful conduct has been widespread, repeated, and consistent.

144.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

145.    The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan (including Defendant's time-rounding policy); and (d) their claims are based upon the same factual and legal theories.

146.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay.

147.    The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut down/log out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

148.    Many similarly situated current and former CSAs have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

149.    Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

150.    Those similarly situated employees are known to Defendant, are readily

identifiable, and can be located through Defendant's records.

151.    Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

152.    The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

153.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on her own behalf and on behalf of:

> ***All similarly situated current and former hourly CSAs who worked for Defendant, at any time during the last three years.***

(hereinafter referred to as the "Rule 23 Class"). Plaintiff reserves the right to amend this definition as necessary.

154.    The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

155.    There is a well-defined community of interest among Rule 23 members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

> a.    Whether the pre-shift time that Rule 23 Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

> b.    Whether the time that Rule 23 Class members spend on work

activities during their lunch break, such as logging back into computer systems and clocking in is compensable time;

c.    Whether the time that the Rule 23 Class members spend on work activities after they clock out, such as logging out of computer systems and shutting down the computer is compensable time; and

d.    Whether Defendant's failure to pay the Rule 23 Class members for this pre-, mid- and post-shift time at their agreed upon rate constitutes a breach of contract and whether Defendant was unjustly enriched.

156.    Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.  Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

157.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

158.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

159.    This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel

know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

160.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

161.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

162.    Plaintiffs re-allege and incorporates all previous paragraphs herein.

163.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

164.    At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

165.    Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

166.    Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

167. At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

168. At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than fouteen (14) to twenty (20) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

169. In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

170. Additionally, as set forth above, Defendant unlawfully failed to include all remuneration paid to the CSAs in the calculation of their overtime rates. *See above*.

171. Defendant's violations of the FLSA were knowing and willful.

172. Defendant knew or could have determined how long it takes its CSAs to perform their off-the-clock work.

173. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

174. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Class Action)**

**Breach of Contract**

175.    Plaintiffs reallege and incorporate all previous paragraphs herein.

176.    This Count applies only to workweeks were the FLSA's overtime protections are inapplicable (less than 40 hours).

177.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Class members performed on Defendant's behalf.

178.    Defendant's contractual promises to pay Plaintiffs and each Rule 23 Class member's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiffs and the Rule 23 Class members.

179.    Upon information and belief, each Rule 23 Class member, including Plaintiffs, has an hourly rate of approximately $14.00 per hour.

180.    Plaintiffs and every other Rule 23 Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift and meal period activities, described herein.

181.    By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Class.

182.    On occasion, CSAs missed time from work causing them to work under 40 hours in a given week.

183.    To the extent there is no other state law remedy available, Plaintiffs and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week.

184.    As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 Class have been damaged (to the extent there is no other state law remedy) in amount to be determined at trial.

**COUNT III**
**(Rule 23 Class Action)**
**Unjust Enrichment**

185.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

186.    This Count is pled in the alternative to Count III, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

187.    This Count applies only to workweeks were the FLSA's overtime protections are inapplicable (less than 40 hours).

188.    At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Class members performed for the benefit of Defendant.

189.    Plaintiffs and every other Rule 23 Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

190.    By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

191.    Plaintiffs and the Rule 23 Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

192.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Class member and enjoyed the benefits derived therefrom.

193.    Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Class member to finance its various business ventures or pay its equity owners.

194.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Class for the same.

195.    Plaintiff and the Rule 23 Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

196.    As a direct and proximate result of Defendant's actions, and to the extent there is no other state law remedy available, Plaintiffs and every other Rule 23 Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective and on behalf of the Rule 23 Class requests judgment as follows:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims for common law breach of contract and unjust enrichment (Counts II and III);

c. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and the Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiffs as the representatives of the FLSA collective action and the Rule 23 Class, and undersigned counsel as Class counsel for the same;

e. Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

f. Declaring Defendant's violation of the FLSA was willful;

g. Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class and the Rule 23 Class the full amount of damages and liquidated damages available by law;

h. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

i. Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

j. Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: February 21, 2023   Respectfully Submitted,

**MORGAN & MORGAN, P.A.**

*s/ Andrew R. Frisch*
Andrew R. Frisch (FBN 027777)
8151 Peters Road
Plantation, FL 33324
Phone: (954) WORKERS
Fax: (954) 327-3013
AFrisch@forthepeople.com

**ASH LAW, PLLC**
Charles R. Ash, IV (P73877) (*PHV Forthcoming*)
402 W. Liberty  St.
Ann Arbor, MI 48178
Phone: (734) 234-5583
Email: cash@nationalwagelaw.com

**HOOPER HATHAWAY, P.C.**
Oscar Rodriguez (P73413) (*PHV Forthcoming*)
126 Main St
Ann Arbor, MI 48104-1903
Phone: (734) 662-4426
Email: orod@hooperhathaway.com

*Counsel for Plaintiffs and the*
*Putative Collective/Class Members*