United States District Court
Southern District of Texas
**ENTERED**
November 14, 2023
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| LATESA FOBBS, LATOYA COLLINS, | § | |
| RICKY STEVENS, AND DEONTRE | § | |
| LOWERY, INDIVIDUALLY AND ON | § | |
| BEHALF OF OTHERS SIMILARLY | § | |
| SITUATED, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION No. 4:23-CV-0624 |
| | § | |
| RIVERWAY BUSINESS SERVICES, INC., | § | |
| *Defendant*. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

This Fair Labor Standards Act (FLSA) case is before the Court on Plaintiffs' Motion for Collective Certification, Pursuant to 29 U.S.C. § 216(b).[1] ECF 9. Having considered the parties' submissions and the law, the Court recommends that the Motion for Collective Certification be GRANTED IN PART AND DENIED IN PART and a modified collective action be certified.

### I.      Background

Plaintiffs filed a Complaint against Defendant Riverway Business Services, Inc. on or about February 21, 2023 asserting claims for violation of the FLSA's

---

[1] The District Court referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  ECF 20.

overtime provisions and seeking certification of a collective action. ECF 1. Defendant is a full-service staffing company that provides customer service agents (CSAs) to a broad range of companies, such as NRG Energy, Inc. Plaintiffs are current or former CSAs employed by Defendant. Within the three-year period prior to filing this lawsuit, Defendant employed approximately 900 CSAs who were assigned to eleven different companies. The named Plaintiffs worked remotely, but some of the 900 CSAs reported to work at call centers or worked on a hybrid schedule.

Plaintiffs contend that Defendant maintained a uniform compensation policy for all CSAs regardless of where they worked or to which of Defendant's clients they were assigned. Plaintiffs allege that Defendant's uniform compensation policy violated the FLSA because Defendant required Plaintiffs to work "off the clock," utilized an unlawful time-rounding policy, and failed to include non-discretionary bonuses in Plaintiffs' regular rate of pay for purposes of calculating overtime wages. Plaintiffs seek certification of a collective action consisting of:

> All current and former hourly Customer Service Agents (CSAs) who worked for Riverway Business Services, Inc. from February 21, 2020 to present.

ECF 1 at 21; ECF 9 at 1.

Defendant opposes Plaintiffs' motion for certification arguing that the proposed collective action members are not similarly situated for a variety of

reasons, including that they worked as CSAs for eleven different companies, each of which has its own policies and procedures and uses its own time-keeping computer programs.  *See* ECF 19 at 7-9.

## II.   Legal Standards

The FLSA requires covered employers to pay nonexempt employees overtime wages at a rate of one and one-half times their hourly rate and provides employees a cause of action against employers who fail to do so.  *Lagunas v. La Ranchera, Inc*., No. CV H-22-17, 2023 WL 5511198, at *2 (S.D. Tex. Aug. 25, 2023) (citing 29 U.S.C. §§ 207(a), 216(b)).  Section 216(b) of the FLSA permits similarly situated employees to proceed in a collective action.  *Id.*

The Fifth Circuit in *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021), set forth guidelines for determining when an FLSA case should proceed as a collective action.  *Swales* expressly rejected the lenient, two-stage, conditional certification approach of *Lusardi v. Xerox, Corp.*, 118 F.R.D. 351 (D.N.J. 1987).  Instead, *Swales* instructs district courts to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'"  *Id.* at 441.  Potential plaintiffs are not similarly situated if resolving the merits requires a "highly individualized inquiry into each potential opt-in's circumstances."  *Eltayeb v. Deli Mgmt., Inc*., No. 4:20-CV-00385, 2021 WL 5907781, at *2 (E.D. Tex. Dec. 14, 2021) (citing *Swales*, 985

3

F.3d at 442).   Under *Swales*, plaintiffs must "show a demonstrated similarity between the purported collective, such as a factual nexus that binds the claims together so that hearing all claims in one proceeding is fair to all parties and not beset with individual inquiries."   *Klick v. Cenikor Found.*, 79 F.4th 433, 442 (5th Cir. 2023).   After identifying the material facts and legal considerations at issue, the Court may decide (i) collective action is not appropriate; (ii) additional discovery is needed to make a determination; or (iii) a certain category of employees is similarly situated and should be given notice.  *Swales,* 985 F.3d at 443.

Although *Swales* invalidated *Lusardi's* lenient two-step approach, the Fifth Circuit has recognized that courts may still find it useful to consider the three factors identified in *Lusardi* to guide the similarly situated analysis.  *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336 (5th Cir. 2023).   The three factors are: "(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."   *Id.* (changes in original).   The use of the factors is not mandatory because a there is no "one-size-fits-all analysis or mechanical test to apply."   *Id.*   "The bottom line is that the district court has broad, litigation-management discretion" to determine whether to certify a collective action.  *Id.* (quoting *Swales*, 985 F.3d at 433).

### III.    Analysis

Plaintiffs assert that Defendant violated the FLSA by (1) requiring "off the clock work;" (2) requiring Plaintiffs to "round down" their time; and (3) not including non-discretionary bonuses in Plaintiffs' regular rate of pay.  *See* ECF 1; ECF 9.  Plaintiffs argue that the members of the proposed collective are subject to uniform pay policies that do not vary based on the particularities of an employee's job location or job duties.  *Id.*  Defendant disputes that the claims of the proposed collective are based on uniform policies and argues their claims cannot be decided collectively.  The Court finds that the proposed collective action is overbroad and that only certain CSAs should be given notice.

**A. Plaintiffs have not met their burden to show that all members of the proposed collective action are similarly situated.**

#### 1.  Plaintiffs' Evidence

Plaintiffs rely on the substantively identical Declarations of the four named Plaintiffs:  Latesa Fobbs (ECF 9-3), Latoya Collins (ECF 9-4), Ricky Stevens (ECF 9-5), and Deontre Lowery (ECF 9-6).  Each Declaration states that the Plaintiff was employed by Defendant as a CSA within the past three years and worked from a home office.  *Id.* ¶ 2.  Each Declaration states that the Plaintiff was required to perform nine computer log-in tasks prior to beginning their shift, ending with logging into the Avaya phone system for receiving calls.  *Id.*  ¶ 6.  Plaintiffs state that Defendant instructed them to use the Avaya log-in time stamp as their beginning

work time when recording their time. *Id.* ¶ 11. According to Plaintiffs, this policy

means that CSAs do not get credit for working the 7-10 minutes it takes to log into

their computers in the morning or after lunch. *Id.* ¶¶ 8, 15. Plaintiffs' Declarations

also state that Defendant requires that

> [T]he time the CSA made themselves available for calls in Avaya was
> rounded to the nearest quarter of an hour. However, because CSAs
> were prohibited from clocking in after the start of their scheduled shift
> and instead instructed to clock-in just before the start of their scheduled
> shift, the rounding policy resulted in CSAs disproportionately and
> routinely losing time.

*Id.* ¶ 12. Plaintiffs' Declarations do not mention incentive bonuses.

Plaintiffs also rely on documents attached to their Complaint, which they

contend, based on the presence of Defendant's logo on each, apply to all CSAs

regardless of the client to which the CSA is assigned or whether the CSA works in

a call center, from home, or a hybrid of the two. The documents attached to

Plaintiffs' Complaint are:

- documents titled "Attendance Standards" and "Acronyms" (ECF 1-5);

- an email from Defendant's HR Coordinator with the subject line
  "Overtime Protocols" informing "Riverway Rockstars" that overtime
  must be approved (ECF 1-6);

- a document titled "Time Card Rounding Sheet" that explains how to
  enter times in quarter-hour increments (ECF 1-7 (stating "0-7 minutes
  enter time worked as '0'; 8-22 minutes enter time worked as '0.25'",
  etc.)); and

- a document tilted "Employee Guidelines" listing 27 guidelines that
  employees were required to review and initial (ECF 1-8).

Plaintiffs have also presented named Plaintiff Latesa Fobbs's paystub for the week of May 9, 2022 through May 15, 2022.  ECF 9-9.  The paystub reflects 40 regular hours at $19.00 per hour ($760.00 total), 0.30 overtime hours at $28.50 per hour ($14.25 total), and an incentive bonus of $431.75.  *Id.*  The overtime rate of $28.50 is computed by adding the hourly rate ($19.00) and half the hourly rate ($9.50).  Thus, the paystub demonstrates that for the week of May 9, 2022, Fobbs's overtime rate was calculated using a regular rate of pay that did not include the $431.50 incentive bonus.

### 2.  Defendant's Evidence

Defendant presents the declaration of its President, Margo Costello.  ECF 19-1.  Ms. Costello's declaration states that the core aspects of each CSA's duties depend on the client assignment and CSAs are not subject to the same policies and procedures.  *Id.* ¶ 6, 8.  For example, Costello declares that some CSAs act as sales agents while others engage only in customer service and have no sales responsibilities at all.  *Id.* ¶ 6.  Further, Costello declares that Defendant's "clients have their own unique computer programs, applications, and phone systems that are different from client to client."  ECF 19-1 ¶ 7.  Therefore, all CSAs "do not use the same computer programs and applications, timekeeping systems, or phone systems." *Id.*

Also, according to Costello, the document titled "Attendance Standards" applies only to CSAs who work for one particular Riverway client. *Id.* ¶ 7 (referring to standards that CSAs "will arrive at least 7-10 minutes early" and that "[t]he Avaya phone system is the official time stamp for recording login and logout times," (ECF 1-5)). Only one of Defendant's clients uses the Avaya phone system referenced in Plaintiffs' Declarations. ECF 19-1 ¶ 7.

Additionally, Costello declares that only two of Riverway's clients use a Vendor Management System (VMS) and CSAs assigned to those two clients record their time through the VMS. *Id.* ¶ 7. Meanwhile, CSAs working for other clients manually input their time into Defendant's online timesheet. According to Costello, Riverway requires CSAs to record all time worked. *Id.* She declares that because the computer, phone, and time-keeping programs CSAs were required to use varies by client, the amount of time needed to log-in, and what, if any, log-ins had to be completed before the start of a CSA's shift also varies by client. *Id.*

Costello's declaration attaches exhibits explaining its payroll process and online timecard procedures. ECF 19-2; ECF 19-3. Time records for each named Plaintiff during the relevant period indicate their hours varied significantly from week to week and were often well below 40 hours a week. ECF 19-4. Defendant has presented Fobb's time sheet for the April 17, 2023 workweek, which Defendant contends demonstrates that its time-rounding policy rounds both up and down and

sometimes results in an CSA being paid for minutes not actually worked.  ECF 19-1 ¶14; ECF 19-5.

### 3. Court's conclusions regarding whether plaintiffs are similarly situated

Defendant's evidence precludes a finding that ***all 900 CSAs*** employed by Defendant during the relevant 3-year period are similarly situated for purposes of an FLSA collective action.  Costello's Declaration establishes that while all CSAs employed by Defendant have the same job title and some of the same job duties, the CSA are dissimilar in that some have additional duties imposed by the client to which they are assigned; some work remotely and some work in call centers, each of which have varying internet speeds affecting computer start-up times; they use different computer software and hardware depending on where they work and to which client they are assigned; they are subject not just to Defendant's attendance and work guidelines but also to policies implemented by the client to which they are assigned; and they enter their time by various methods, with those assigned to clients who use a VMS system using that system and others using Riverway's online system.  ECF 19-5.

Plaintiffs argue that the disparities cited by Defendant are irrelevant because this case involves uniform unlawful pay schemes applicable to all CSAs despite differences in work duties or work location.  Yet, Plaintiffs establish through their Declarations only that CSAs who work remotely for a client that uses the Avaya

phone system and are required to use the Avaya timestamp for timekeeping are similarly situated. Many of the 900 proposed class members were not assigned to the clients who use the Avaya phone system. It is axiomatic that CSAs can only be required to use the Avaya time stamp as the start time for their shift if they are working for a client that uses the Avaya system.

The disparate employment settings and client requirements applicable to CSAs weigh against certification of the proposed collective action because there is no collective basis for determining whether an overtime violation occurred. *See Fuller v. Jumpstar Enterprises, LLC*, No. CV H-20-1027, 2021 WL 5771935, at *7 (S.D. Tex. Dec. 6, 2021) (identifying "similarly situated" factors and denying certification of a collective action because "[t]he present record shows no collective basis that the court could use to determine how many hours each [plaintiff] worked, how often each [plaintiff] worked overtime, and if any overtime is due."). This case differs from the call center cases cited by Plaintiffs. ECF 9 at 9 n.5. The cases Plaintiffs cite are pre-*Swales* "conditional certification" cases, and most of them are from courts outside the Fifth Circuit. *See id.* In addition, none of the cases involved remote workers who did not report to work at a call center. For example, the lone Southern District of Texas case cited by Plaintiffs involving call center employees, *Clarke v. Convergys Customer Mgmt. Grp., Inc.*, 370 F. Supp. 2d 601, 606 (S.D. Tex. 2005), involved plaintiffs who worked "(1) in a single job category (2) on a

single floor (3) at a single facility (i.e., the Houston call center) (4) [and] were all hourly, non-exempt employees." *Id.* Similarly, the conditional class certified in *Oliver v. Aegis Commc'ns Grp., Inc*., No. CIV.A. 3:08-CV-828-K, 2008 WL 7483891, at *1 (N.D. Tex. Oct. 30, 2008) (cited at ECF 9 at 9) consisted of plaintiffs who worked as hourly-paid telephone agents at a single Irving, Texas, call center who handled incoming calls for a single client. Here, as discussed above, the named Plaintiffs worked remotely from home offices, while other CSAs worked at various job sites. Because the alleged unlawful employment practices involve log-in and timekeeping protocols, the variety of job sites in this case demonstrates that not all 900 CSAs are similarly situated.

Furthermore, as argued by the Defendant, the proposed collective action is over-inclusive because some CSAs did not work overtime. If the proposed collective action were certified, Notice would be sent to some CSAs with no valid claim. ECF 19 at 29; ECF 19-1 ¶ 12. Yet, limiting the collective only to CSAs whose time records reflect overtime hours also would be inappropriate because Plaintiffs' claim they were required to work off the clock and round down their time, resulting in unrecorded overtime. As Defendant notes, Plaintiffs allege they were not paid for 14-20 minutes per shift, five shifts per week, resulting in a maximum of 100 minutes (or 1.66 hours) of unpaid work per week. ECF 19 at 24 (citing ECF 1 ¶ 16). Therefore, a collective action limited to CSAs who recorded at least 38.34

working hours in one week will avoid Notice being sent to individuals who have no plausible claim. *See* ECF 19 at 20.

As for the regular rate miscalculation claim, Defendant argues in their Sur-Reply that nondiscretionary incentive bonuses are paid by the client and not required to be included in the regular rate when calculating the overtime rate. ECF 25 at 6 (citing *Sec'y United States Dep't of Lab. v. Bristol Excavating, Inc*., 935 F.3d 122, 138 (3d Cir. 2019)). Defendant's argument is the type of merits argument that, even post-*Swales*, is not appropriate for resolution on the motion for certification of the collective action. Defendants' argument is not intertwined with the determination of whether the members of the proposed collective action are similarly situated. *See Swales*, 985 F.3d at 436, 443 (instructing district courts to "avoid even the appearance of judicial endorsement of the merits of the action" but where Defendant's evidence goes to both the merits and similarity, the court need not ignore it). Whether Defendant violated the FLSA by not including incentive bonuses paid to CSAs in the regular rate of pay for calculating the overtime rate ***can*** be answered collectively for members of the approved collective action.

Finally, the Court considers whether the collective should be limited to CSAs who worked overtime ***and*** were paid an incentive bonus in any given week. Limiting the collective in such a way would likely eliminate potential plaintiffs who are similarly situated for purposes of the off-the-clock and time-rounding claims. The

12

Court concludes that whether any particular Plaintiff can recover damages on the regular rate miscalculation claim is an issue that can be decided at a later stage. *See Tuggle v. Rockwater Energy Sols., Inc*., No. CV H-18-4746, 2019 WL 7040330, at *4 (S.D. Tex. Dec. 3, 2019), report and recommendation adopted, No. CV H-18-4746, 2019 WL 6971660 (S.D. Tex. Dec. 19, 2019) (pre-*Swales* case holding that differences in the amount of damages due to each plaintiff does not defeat conditional certification where the damages are the result of the alleged class-wide injury); *Cf. Steering Comm. v. Exxon Mobil Corp*., 461 F.3d 598, 602 (5th Cir. 2006) (Rule 23 class action case stating that the necessity to calculate damages on an individual basis does not necessarily preclude class certification where the damages can be determined by a mathematical or formulaic calculation).

Although Plaintiffs' proposed collective action is over-inclusive, the Court finds that Plaintiffs have satisfied their burden as to a less-inclusive collective action. The Court finds based on the record evidence that CSAs employed by Defendant who worked remotely for at least 38.34 hours in any week during the relevant time period, used the Avaya phone system, and were required to use the Avaya time-stamp as their login and logoff time for purposes of time-keeping, are similarly situated and should receive notice of this FLSA collective action.

**B. The parties must confer regarding the form of the Notice.**

In light of this recommendation that the District Judge approve a significantly narrower collective action than the one requested by Plaintiffs, the parties should confer and submit a revised Notice within 14 days of entry of an Order of Adoption of this Memorandum and Recommendation, if any.  If the parties are unable to agree on the form of Notice, they may request a hearing before the Court.

## IV.    Conclusion and Recommendation

For the reasons discussed above, the Court recommends that Plaintiffs' Motion for Collective Certification, Pursuant to 29U.S.C. § 216(b) (ECF 9) be GRANTED IN PART AND DENIED IN PART.  The Court RECOMMENDS approval of a collective action and notice to the following group of potential plaintiffs:

> All current and former hourly-paid Customer Service Agents (CSAs) employed by Riverway Business Services, Inc. from February 21, 2020 to present and who during that period (i) worked remotely from a home office; (ii) worked more than 38.34 hours in any workweek from February 21, 2020 to present; (iii)  used the Avaya phone system; and (iv) entered their time using the Avaya time-stamp as their login and logoff time.

The Court further RECOMMENDS that Defendant be ORDERED to produce to Plaintiffs a list of all potential opt-in plaintiffs with dates of employment and last-known contact information, including telephone and email addresses, within 14 days of entry of an Order of Adoption of this Memorandum and Recommendation, if any.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on November 14, 2023, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge